1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

### EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| JOSEPH MARCOS DURAN, | Case No. 1:16-cv-00347-SAB |
| Plaintiff, | ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL |
| v. | (ECF Nos. 16, 17, 18) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

11
12
13
14
15
16
17
18

## I.

19

### INTRODUCTION

20      Plaintiff Joseph Marcos Duran ("Plaintiff") seeks judicial review of a final decision of the

21  Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for

22  disability benefits pursuant to the Social Security Act.  The matter is currently before the Court

23  on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley

24  A. Boone.[1]

25      Plaintiff suffers from asthma, back pain, anxiety disorder NOS; and major depressive

26  disorder.  For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

27  / / /

28  ---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 8, 9.)

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff received supplemental security income benefits based on disability as a child. (AR 65, 353-358.)  As required under the regulations, Plaintiff's eligibility for benefits was re-determined under the rules for determining disability in adults when he turned eighteen.  On March 22, 2012, it was determined that Plaintiff was no longer disabled as of March 1, 2012. (AR 74-77.)  The determination was upheld on reconsideration.  (AR 106-108.)  Plaintiff requested and received a hearing before Administrative Law Judge John Heyer ("the ALJ"). Plaintiff appeared for a hearing on November 14, 2012.  (AR 41-64.)  On July 14, 2014, the ALJ found that Plaintiff was not disabled.  (AR 16-28.)  The Appeals Council denied Plaintiff's request for review on January 11, 2016.  (AR 1-3.)

### A.      Hearing Testimony

Plaintiff testified at the May 21, 2014 hearing.  (AR 45-56.)  Plaintiff was born on January 4, 1994, and was 20 years old on the date of the hearing.  (AR 45.)  Plaintiff does not drive and his sister dropped him off for the hearing.  (AR 45.)  Plaintiff has never worked.  (AR 45.)  Plaintiff does not go outside and when he is around people his anxiety acts up.  (AR 45.)

Plaintiff had been seeing a psychiatrist and psychologist since August or December 2013. (AR 45.)  Plaintiff sees a therapist for 20 minutes once a month and the psychiatrist every 2 months.  (AR 46.)  Plaintiff cannot tell if the therapy is helping because 20 minutes is not enough.  (AR 46.)  Plaintiff had just started taking medications that help slightly.  (AR 46.) Plaintiff requested to be kept on a low dose until he felt comfortable enough to increase the dosage.  (AR 46.)  Plaintiff had not taken medication before.  (AR 47.)

Plaintiff was previously found to be disabled due to his depression, anger, and slight OCD.  (AR 47.)  Plaintiff attended public school from first through fifth grade.  (AR 47.)  In fifth grade, Plaintiff went on independent study from sixth to seventh grade.  (AR 47.)  Plaintiff tried to go to intermediate school but could not handle the kids and switching classes all the time. (AR 47.)  Plaintiff stopped going to school and an officer was sent to pick him up.  (AR 47.) Plaintiff went back on independent study for seventh and eighth grade.  (AR 47.)  Plaintiff was in

a small class with three teachers and four to six students.  (AR 48.)  Plaintiff went to independent study at West High for ninth grade.  (AR 48-49.)  He dropped out of school in the middle of the tenth grade.  (AR 49.)

Plaintiff dropped out of school because the doctor who gave him the referral to go to the school had left and he could not find someone else to give him a referral.  (AR 49.)  His mom talked to the principal and they placed him in the Opportunity class, but over time more kids started coming and he could not handle going to lunch.  (AR 49.)  Plaintiff had to stay at school at least five hours with other kids doing work.  (AR 50.)  When he went to lunch he would have to be at a table with other kids who were bad kids and he could not relate to them.  (AR 50.)  Plaintiff would like to go to adult school, but is nervous because his sister cannot take him all the time so he would have to take the bus.  (AR 50-51.)  It would be a problem taking the bus because other people are on it.  (AR 51.)

Plaintiff has taken the bus before.  (AR 51.)  The last time was the prior year when he went to Omni for the first time.  (AR 51.)  Plaintiff's mother goes with him on the bus.  (AR 51.)  Sometimes there will be a lot of people and sometimes there are not a lot of people on the bus.  (AR 51.)

Plaintiff does not go to the movies or the mall and has no friends.  (AR 51.)  Plaintiff does not go to see relatives.  (AR 51.)  People do come to his house to visit his mother or his sister.  (AR 51.)  Plaintiff gets along with them okay, but feels like he cannot talk to them as well as he can to the people who live with him so he avoids them and stays in his room.  (AR 52.)  Whether Plaintiff can be in a room with other people depends on the number of people.  (AR 52.)  Plaintiff can be in a room with less than ten people.  (AR 52.)  If there are ten or more people in the room, he begins to feel anxious.  (AR 52.)

Plaintiff also has slight scoliosis in his back.  (AR 52.)  The scoliosis used to cause him physical problems, but it has been a bit better.  (AR 52.)  Plaintiff can lift fifty pounds, stand for two hours, walk for an hour, and sit all day long.  (AR 53.)  Plaintiff does not exercise.  (AR 53.)

Plaintiff worries about things such as that something might happen to his mother when she leaves the house.  (AR 53.)  Plaintiff has trouble sleeping because sometimes he does not feel

like sleeping.  (AR 53-54.)  Sometimes he gets stressed or feels depressed and it is hard to sleep.  (AR 54.)  Plaintiff has trouble falling asleep and gets tired easily.  (AR 54.)  The current medications Plaintiff is taking were started April 4, 2014.  (AR 54.)  Prior to that Plaintiff had been prescribed two different medications around December or January.  (AR 55.)  Plaintiff never took any mental health medication as a child.  (AR 55.)  Plaintiff's counsel stated that the record shows he took Paxil around 2012.  (AR 55-56.)  Plaintiff does not remember taking any medication.  (AR 56.)

Joel Greenberg, a vocational expert ("VE"), also testified at the hearing.  (AR 56-.)  The ALJ presented a hypothetical of an individual that can lift about 50 pounds; sit, stand, and walk six hours each in an eight hour workday; and was able to perform jobs at all exertion levels.  (AR 57.)  This individual would not be able to interact with the general public, could only occasionally interact with co-workers and supervisors; and who could work in proximity to others, but not as part of a team.  (AR 57-58.)  The VE ruled out jobs that would require an individual to be on their feet a majority of the day because they would not allow the individual to be able to change or sit down after an hour of standing or walking.  (AR 58.)  The VE opined that this individual could work as a hand packager, Dictionary of Occupational Titles ("DOT") 920.587-018, exertion level medium, SVP: 2. (AR 58.)  To account for other SVP levels and variables that would affect the hypothetical, the VE reduced the jobs available by fifty percent, which left 265,000 jobs nationally and 37,000 statewide.  (AR 58.)  This individual would also be able to work as a small product assembler I, DOT 706.684-022, exertion level light, SVP 2.  (AR 58.)  Again to account for other SVP levels, the number of jobs was reduced by fifty percent, leaving 96,000 jobs nationally, and 8,000 jobs statewide.  (AR 58-59.)  This individual could also work as a laundry sorter, DOT 361.687-014, exertion level light, SVP 2.  (AR 59.)  With a fifty percent reduction to account for other SVP levels and possible changes in the hypothetical variables, there would be 204,000 jobs nationally, and 21,000 statewide.  (AR 59.)

Plaintiff's counsel presented a hypothetical of the same individual with no interaction with the general public; who could not interact with supervisors and co-workers fifty percent of the time; and would be unable to respond appropriately to usual work situations and changes in a

work routine setting less than fifty percent of the time.  (AR 59.)  As to the ability to interact with supervisors and co-workers, the VE opined that none of the jobs identified would require such interaction more than fifty percent of the time.  (AR 60.)  The VE asked for clarification on the second part of the hypothetical.  (AR 60-61.)  The attorney clarified that fifty percent of the time the individual would be unable to interact appropriately as well as to respond to changes in a routine setting.  (AR 61.)  The VE opined that this individual would be unable to work.  (AR 62.)

The attorney presented a second hypothetical of the same individual with additional impairments that fifteen percent of the time would him to be unable to perform tasks; would be unable to maintain regular attendance and be punctual; and have difficulty traveling in unfamiliar places or using public transportation.  (AR 63.)  The VE opined there would be no jobs for this individual.  (AR 63.)

### B.    ALJ Findings

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff attained age 18 on January 4, 2012, and was eligible for supplemental security income benefits as a child for the month preceding the month in which he attained age 18.  Plaintiff was notified that he was found no longer disabled as of March 1, 2012, based on a redetermination of disability under the rules for adults who file new applications.

- Since March 1, 2012, Plaintiff has had the following severe impairments: anxiety disorder NOS; and major depressive disorder.

- Since March 1, 2012, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

- Since March 1, 2012, Plaintiff has had the residual functional capacity to lift 50 pounds; sit, stand, and walk for six hours each in an eight hour day; perform no work with the general public; have no more than occasional interactions with coworkers and supervisors; and work in proximity to others but not as part of a

team.  Occasionally is defined as occurring from very little up to one-third of the time, or approximately 2 hours in an 8-hour workday.

- Plaintiff has no past relevant work.

- Plaintiff was born on January 4, 1994, and is a younger individual age 18-49.

- Plaintiff has a limited education and is able to communicate m English.

- Transferability of job skills is not an issue because Plaintiff does not have past relevant work.

- Since March 1, 2012, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

- Plaintiff's disability ended on March 1, 2012, and he has not become disabled again since that date.

(AR 21-27.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled.  Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.

Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the

6

1   claimant is disabled. If not, proceed to step four.

2   Step four: Does the claimant possess the residual functional capacity ("RFC") to
3   perform his or her past relevant work? If so, the claimant is not disabled. If not,
    proceed to step five.

4   Step five: Does the claimant's RFC, when considered with the claimant's age,
5   education, and work experience, allow him or her to adjust to other work that
    exists in significant numbers in the national economy? If so, the claimant is not
6   disabled. If not, the claimant is disabled.

7   Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

8       Congress has provided that an individual may obtain judicial review of any final decision

9   of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g).

10  In reviewing findings of fact in respect to the denial of benefits, this court "reviews the

11  Commissioner's final decision for substantial evidence, and the Commissioner's decision will be

12  disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v.

13  Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a

14  scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)

15  (internal quotations and citations omitted). "Substantial evidence is relevant evidence which,

16  considering the record as a whole, a reasonable person might accept as adequate to support a

17  conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of

18  Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

19      "[A] reviewing court must consider the entire record as a whole and may not affirm

20  simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting

21  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not

22  this Court's function to second guess the ALJ's conclusions and substitute the court's judgment

23  for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is

24  susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be

25  upheld.").

26                                              **IV.**

27                              **DISCUSSION AND ANALYSIS**

28      Plaintiff contends that the ALJ erred by failing to develop the record; to properly consider

1   the medical evidence; to properly consider lay witness testimony; to properly evaluate Plaintiff's

2   credibility; to consider how Plaintiff's medication, physical and mental limitations, lack of work

3   history, and difficulty making appointments would affect his job performance; and to evaluate

4   his age, physical conditions, and ability to perform job requirements.

5       **A.      Failure to Develop the Record**

6       Plaintiff contends that the ALJ erred by failing to develop the record in regard to his

7   asthma.  Plaintiff argues that a more developed medical record could have helped him to be

8   found disabled.  Defendant responds that Plaintiff has failed to show that the ALJ had a duty to

9   further develop the record.  Plaintiff replies that the ALJ stated that his opinion is based on the

10  lack of treatment notes and limited record.

11      When applying for disability benefits, the claimant has the duty to prove that he is

12  disabled.  42 U.S.C. § 423(c)(5)(A).  The ALJ has an independent "duty to fully and fairly

13  develop the record and to assure that the claimant's interests are considered."  Widmark v.

14  Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006) (quoting Brown v. Heckler, 713 F.2d 441, 443

15  (9th Cir. 1983)).  The ALJ has a duty to further develop the record where the evidence is

16  ambiguous or the ALJ finds that the record is inadequate to allow for proper evaluation of the

17  evidence.  Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); Tonapetyan v. Halter, 242

18  F.3d 1144, 1150 (9th Cir. 2001).  Further, the ALJ's duty to fully develop the record is

19  heightened where the claimant may be mentally disabled and, therefore, unable to protect his

20  own interests.  Higbee v. Sullivan, 975 F.2d 558, 562 (9th Cir. 1992).  "He must be especially

21  diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."

22  Higbee, 975 F.2d at 561 (quoting Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978)).

23      In this instance, Plaintiff was originally disabled under the regulations applying to

24  children based upon his mental disabilities.  (AR 67, 74.)  Upon seeking reconsideration,

25  Plaintiff asserted that he continued to be disabled due to his mental impairments.  (AR 79.)  At

26  the initial haring on October 17, 2012, Plaintiff alleged disability due to his anxiety and stated he

27  had no physical limitations.  (AR 87, 92.)  Similarly, Plaintiff's mother contended that his mental

28  limitations were the cause of his disability.  (AR 94.)  On reconsideration, Plaintiff alleged

asthma and anxiety.  (AR 100.)

In requesting his hearing before the ALJ, Plaintiff contended that he was disabled by his anxiety and he had also been diagnosed with OCD.  (AR 121.)  Further, the disability reports generally addressed Plaintiff's disability due to his mental symptoms.  (AR 188-197, 201, 204, 207-215, 215-222, 227-234, 235-242, 249-255, 258-264, 267.)  In February 2012, reports stated that Plaintiff had limitations due to back problems.  (AR 212, 220.)  However, on March 8, 2012, when Plaintiff's mother returned a call regarding the allegations of back pain and asthma she stated he does not really have asthma attacks.  (AR 224.)  Plaintiff might have to use his inhaler once every two months.  (AR 224.)  Sometimes he will need it when he is anxious or really active.  (AR 224.)  Plaintiff has never been hospitalized for his asthma and it is under good control.  (AR 224.)  In regards to his back problems, his mother stated he has never seen a doctor for his back and he is able to get around and walk without problems.  (AR 224.)

Plaintiff's counsel filed a position statement on May 21, 2014 in which the argument was made that Plaintiff was disabled due to his anxiety, depression, and social phobia.  (AR 278-280.)  Plaintiff argued that he was disabled because his mental disabilities caused non-exertional limitations that reduced his occupational base.  (AR 279-280.)  At the hearing, Plaintiff's counsel did not object to the evidence upon which the ALJ was basing his opinion.  (AR 43-44.)  Plaintiff's attorney questioned the VE on hypotheticals containing Plaintiff's alleged limitations and there were no hypotheticals presented that included any physical limitations beyond those proffered by the ALJ.  (AR 59-63.)

In this instance, the Court finds that the ALJ did not err by failing to further develop the record due to Plaintiff's allegations of back pain and asthma.  First, Plaintiff did not allege that he was impaired due to his asthma, he identifies no limitations associated with his asthma, and he never received any treatment or saw any doctors for back pain.  Secondly, the Ninth Circuit recently held in an unpublished case that "[t]he existence of some evidence in the medical records regarding these conditions is not sufficient to have put the ALJ and the Appeals Council on notice that [the claimant] claimed specifically that these conditions constituted severe impairments." Harshaw v. Colvin, 616 F. App'x 316 (9th Cir. 2015).  The Ninth Circuit has held

1  that "at least when claimants are represented by counsel, they must raise all issues and evidence

2  at their administrative hearings in order to preserve them on appeal." Meanel v. Apfel, 172 F.3d

3  1111, 1115 (9th Cir. 1999), as amended (June 22, 1999).

4      Plaintiff was represented by counsel in this action and disability was sought based on

5  Plaintiff's mental limitations.  No evidence or argument was presented at the administrative level

6  that Plaintiff had severe impairments due to asthma or back pain.  The ALJ did not err by failing

7  to develop the record in regards to Plaintiff's asthma and back pain.

8      **B.      Medical Opinion Evidence**

9      Plaintiff contends that the ALJ erred by giving substantial weight to the opinions of the

10  state agency physicians and failing to state with specificity why the treating physician's findings

11  were inadequate.  Defendant counters that the ALJ explained why he found the weight of the

12  record did not support mental limitations beyond those limitations provided in the RFC.  Plaintiff

13  responds that the ALJ did not give adequate reasons to deviate from the general rule as to the

14  weight to be given to physician opinions.

15      The weight to be given to medical opinions depends upon whether the opinion is

16  proffered by a treating, examining, or non-examining professional.  See Lester v. Chater, 81 F.3d

17  821, 830-831 (9th Cir. 1995).  In general a treating physician's opinion is entitled to greater

18  weight than that of a nontreating physician because "he is employed to cure and has a greater

19  opportunity to know and observe the patient as an individual."  Andrews v. Shalala, 53 F.3d

20  1035, 1040-41 (9th Cir. 1995) (citations omitted).  If a treating physician's opinion is

21  contradicted by another doctor, it may be rejected only for "specific and legitimate reasons"

22  supported by substantial evidence in the record.  Ryan v. Commissioner of Social Sec., 528 F.3d

23  1194, 1198 (9th Cir.) (quoting Bayless v. Barnhart, 427 F.3d 1121, 1216 (9th Cir. 2005)).

24      Where the treating physician's opinion is contradicted by the opinion of an examining

25  physician who based the opinion upon independent clinical findings that differ from those of the

26  treating physician, the nontreating source itself may be substantial evidence, and the ALJ is to

27  resolve the conflict.  Andrews, 53 F.3d at 1041.  However, if the nontreating physician's opinion

28  is based upon clinical findings considered by the treating physician, the ALJ must give specific

1    and legitimate reasons for rejecting the treating physician's opinion that are based on substantial

2    evidence in the record.  Id.

3         The contrary opinion of a non-examining expert is not sufficient by itself to constitute a

4    specific, legitimate reason for rejecting a treating or examining physician's opinion, however, "it

5    may constitute substantial evidence when it is consistent with other independent evidence in the

6    record."  Tonapetyan, 242 F.3d at 1149.

7         1.    Dr. Patel

8         Plaintiff argues that the ALJ erred in the weight provided to Dr. Patel, his treating

9    physician's, opinion.  Defendant counters that the ALJ properly evaluated the medical evidence

10   and properly support his rejection of Dr. Patel's opinion including the consideration of the length

11   and nature of the treatment relationship.

12        The Social Security regulations provide that if a treating physician's opinion "of the

13   nature and severity of your impairment(s) is well-supported by medically acceptable clinical and

14   laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in

15   your case record, we will give it controlling weight."  20 C.F.R. § 416.927(c)(2); see also Orn v.

16   Astrue, 495 F.3d 625, 631 (9th Cir. 2007).  However, if the treating physician's opinion is not

17   given controlling weight, the ALJ considers the length and frequency of treatment, the nature and

18   extent of the treatment relationship, the medical signs and laboratory findings, consistency of the

19   opinion with the medical record, the specialty of the physician, and other factors.  20 C.F.R. §

20   416.927(c).  The ALJ must give reasons for determining the weight given to the decision.  20

21   C.F.R. § 416.927(c).

22        Dr. Patel completed a medical source statement on December 20, 2013, stating that

23   Plaintiff had depression and anxiety.  (AR 24, 454-455.)  Dr. Patel found Plaintiff to be

24   moderately limited in his ability to understand, remember, and carry out simple and complex

25   instructions, markedly limited in his ability to interact appropriately with coworkers, supervisors

26   and the public and to respond appropriately to usual situations, and to changes in a routine work

27   setting.  (AR 24, 455.)  While Plaintiff argues that the ALJ did not provide reasons to deviate

28   from the rule for a treating physician opinion, the ALJ stated that Plaintiff had only stated seeing

1   Dr. Patel in December 2013, and treatment notes since March 2012 were limited to only three

2   office visits.  (AR 24, 454-456, 458-460, 461-463.)  The ALJ properly considered that Dr. Patel

3   issued his medical opinion after seeing Plaintiff only one time on December 20, 2013, and that

4   he had only seen Plaintiff twice, in February and April, for follow-up treatment in determining

5   the weight to be given to his opinion.  See 20 C.F.R. § 416.927(c)(2).

6   The ALJ gave the opinion of Dr. Patel significant weight concerning Plaintiff's diagnoses

7   because he had the opportunity to treat Plaintiff, but, the opinion of Dr. Patel, as set forth in the

8   medical source statement was given little weight for the following reasons: it was based on

9   Plaintiff's subjective complaints; he completed the medical source statement the same day he

10  started treating Plaintiff; clinical findings do not support his opinion; Plaintiff was discharged

11  from therapy in April 2011 and did not receive mental health treatment until visiting Dr. Patel in

12  December 2013; and Plaintiff subsequently reported that psychotropic medication helped even

13  though it was a low dose and he did not take it as prescribed.  (AR 25-26.)

14  The ALJ found that contrary to the limitations opined by Dr. Patel, Plaintiff was found to

15  have depressive disorder, anxiety, and a Global Assessment of Function ("GAF") of 60.[2]  (AR

16  24.)   While Plaintiff endorsed symptoms of anxiety, fearful thoughts, depressed mood,

17  diminished interest or pleasure, excessive worry, fatigue and paranoia, Dr. Patel's clinical

18  findings do not support the limitations set forth in the medical source statement, as Plaintiff had

19  appropriate appearance, was cooperative and oriented to person, time and situation and had

20  unremarkable behavior, clear speech, intact memory, appropriate affect, average intellect, fair

21  reasoning and logical thought processes.  (AR 24, 454-456, 458-460, 461-463.)  The ALJ need

22  not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical

23  findings.   Thomas, 278 F.3d at 957.   The ALJ properly considered that Dr. Patel's stated

24

25  [2] "A Global Assessment of Functioning ("GAF") score is the clinician's judgment of the individual's overall level of
    functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to
26  impairments in functioning due to physical or environmental limitations." Cornelison v. Astrue, 2011 WL 6001698,
    at *4 n.6 (C.D. Cal. Nov. 30, 2011) (citing American Psychiatric Association, Diagnostic and Statistical Manual of
27  Mental Disorders ("DSM–IV"), at 32 (4th ed.2000)).  "A GAF score in the range of 51–60 indicates moderate
    symptoms or moderate difficulty in social, occupational, or school functioning ( e.g., few friends, conflicts with
28  peers or coworkers)." Cornelison, 2011 WL 6001698, at 4 n.6 (citing  American Psychiatric Association,
    Diagnostic and Statistical Manual of Mental Disorders ("DSM–IV"), at 34).

1    limitations were not consistent with the medical findings in the record.

2    Further, the ALJ considered that Dr. Patel's opinion of the severity of Plaintiff's

3    symptoms were based on Plaintiff's subjective complaints. (AR 24.) An ALJ can reject a

4    physician's opinion that is premised on a claimant's subjective complaints where they have been

5    properly discounted as discussed below. Fair v. Bowen, 885 F.2d 597, 605 (1989). The ALJ

6    properly considered that Dr. Patel's opinion was based upon Plaintiff's subjective complaints

7    which the ALJ found to be not credible.

8    The ALJ gave weight to Plaintiff's underlying mental health impairments, especially his

9    reported limitations with social interaction, but found that a more restrictive determination was

10   not warranted in light of Plaintiff's limited treatment in spite of his reported history of mental

11   health impairments and worsening anxiety. (AR 24.) In this instance, the ALJ found that Dr.

12   Patel's opinion regarding the severity of Plaintiff's impairment was undermined by the lack of

13   treatment in the record.

14   The ALJ provided specific and legitimate reasons for rejecting Dr. Patel's opinion that

15   are based on substantial evidence in the record. Andrews, 53 F.3d at 1041.

16   2.   Dr. Nikkel

17   Plaintiff alleges that the ALJ erred when he discounted Dr. Nikkel's opinion because she

18   believed that his lack of work history precluded him from working. Defendant contends that the

19   ALJ properly considered that Dr. Nikkel's assertion that Plaintiff's lack of work history

20   precluded him from working was vague and not a reasonable basis to support her opinion.

21   The opinion of Dr. Nikkel was only given some weight because the ALJ found that

22   clinical findings do not support her opinion that Plaintiff was unable to deal with usual work

23   stress due to his limited social abilities. (AR 25.) Dr. Nikkel noted that Plaintiff's attitude

24   during the examination was reserved yet appropriate. (AR 394.) He made appropriate eye

25   contact. (AR 395.) Clinical findings were generally normal other than he misstated the date, did

26   not know the purpose of the meeting, did not demonstrate abstract thinking, and judgment and

27   insight were impaired. (AR 395-397.) Dr. Nickel noted that Plaintiff responded to questions in

28   an open and honest manner. (AR 398.) Dr. Nickel found that Plaintiff's symptoms were mild.

(AR 398.)  While Dr. Nickel opined that Plaintiff had a fair to poor ability to accept instructions from supervisors and interact with co-workers and the public as evidenced by his social limitations, she did not identify any social limitations during her examination.  (AR 398.)  The ALJ properly considered that Dr. Nikkel's clinical findings did not support her opinion that Plaintiff had limited social abilities that would make him unable to deal with the usual stress encountered in the workplace.  Thomas, 278 F.3d at 957.

Finally, the ALJ found that Dr. Nikkel inappropriately considered Plaintiff's lack of work history in her opinion concerning his ability to deal with usual work stress.  (AR 25.)  In developing Plaintiff's residual functional capacity the ALJ considered Plaintiff's social anxiety and limited Plaintiff to performing no work with the general public; having no more than occasional interactions with coworkers and supervisors; and working in proximity to others but not as part of a team.  (AR 22.)  The ALJ properly considered Dr. Nikkel's opinion regarding his difficulties in dealing with the usual stress encountered in the workplace and tailored the residual functional capacity so that Plaintiff would not be subjected to the usual stress of interacting with people due to his social anxiety.

The ALJ provided legitimate and specific reasons for the weight provided to Dr. Nikkel's opinion.

### 3.   Agency Physicians

Plaintiff contends that the ALJ erred by giving weight to the opinion of Dr. Khan.[3]  The ALJ gave significant weight to the opinion of the agency physicians because the record and clinical findings generally support their conclusions.  (AR 25.)

On March 16, 2012, Dr. Khan performed a mental residual functional capacity assessment and case analysis.  (AR 411-413, 414-416.)  Dr. Khan determined that Plaintiff was capable of doing simple tasks with limited public contact.  (AR 416.)  Plaintiff argues that Dr. Khan's report cites inconsistencies that the ALJ did not address.  However, the inconsistencies noted by Dr. Khan were between Plaintiff's reports and allegations and the clinical findings.

---

[3] In his opening brief Plaintiff refers to this as the opinion of Dr. Vesaili.  Plaintiff corrected the name of the doctor in his reply brief.

Dr. Khan noted that Plaintiff reported problems being around people, but it did not appear that he had any major problems at the consultative examination and was able to provide information even though he reported anxiety.  (AR 415.)  Dr. Khan considered that Plaintiff was taking no medication other than for asthma.  (AR 415.)  Dr. Khan found that Plaintiff was moderately limited in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and travel in unfamiliar places or use public transportation.  (AR 411-412.)  Dr. Khan found no other limitations.  Dr. Khan opined that Plaintiff was

> -Able to understand and remember simple instructions.
> -Able to sustain attention/concentration for two hour periods to complete a regular workday at an acceptable pace and attendance schedule.
> -Able to interact adequately in casual settings and respond appropriately to constructive instructions.
> -Able to respond to simple/infrequent changes in routine.
> -Recommend non-public work setting with exposure to others that is not too intense and/or prolonged.

(AR 413.)

Dr. Khan's opinion is consistent with the evidence in the record cited by the ALJ. Plaintiff did not receive consistent treatment for his alleged mental impairments.  (AR 24.) Plaintiff did not attend therapy and was discharged for his failure to participate in treatment. (AR 305, 306, 307, 311, 312, 314, 316, 317, 321, 323, 326, 327, 335, 342, 359, 365, 371, 372, 373, 376, 377.)  Clinical findings on examination were generally normal.  (AR 24-25, 293, 301, 339, 347-348, 366, 368, 370, 374, 382, 394-398, 459-460, 461-462, 464-465.)   Plaintiff demonstrates adequate concentration to read and play games, has no difficulty with personal care, and makes simple meals.  (AR 25, 215, 217, 219, 220, 359.)

The ALJ provided specific and legitimate reasons for the weight given to the agency physician's opinion that are supported by substantial evidence in the record.

## C.     Plaintiff's Credibility

Plaintiff argues that the ALJ did not provide legally sufficient reasons for the adverse credibility finding.  Defendant counters that the ALJ set forth legitimate and specific reasons to

find that Plaintiff's subjective complaints were not credible.

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." Orn, 495 F.3d at 635 (internal punctuation and citations omitted). Determining whether a claimant's testimony regarding subjective pain or symptoms is credible, requires the ALJ to engage in a two-step analysis. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not require the claimant to show that his impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. Smolen, 80 F.3d at 1282.

Second, if the first test is met and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of his symptoms by offering "clear and convincing reasons" for the adverse credibility finding. Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1160 (9th Cir. 2008). The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted). Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors. Lingenfelter, at 1040; Thomas, 278 F.3d at 958. In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . . ." Tommasetti v.

Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however his statements regarding the intensity, persistence and limiting effects of the symptoms was not entirely credible. (AR 23.) The ALJ provided clear and convincing reasons to reject Plaintiff's testimony.

1. Daily Activities

The ALJ found that Plaintiff has adequate concentration to read and play games and he cleans his room every 2-3 days, has no difficulty managing his personal care, talks with his cousin online and prepares simple meals. (AR 25.) While Plaintiff is correct that "the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from [his] credibility as to [his] overall disability[,]" Orn, 495 F.3d at 639 (citing Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)), there are two ways for an ALJ to "use daily activities to form the basis of an adverse credibility determination: if the claimant's activity contradicts his testimony or if the claimant's activity meets the threshold for transferable work skills." Phillips v. Colvin, 61 F. Supp. 3d 925, 944 (N.D. Cal. 2014). Here, the ALJ did not find that Plaintiff's daily activities met the threshold for transferable work skills, but that his daily activities contracted his statements regarding the severity of his symptoms.

On February 8, 2012, Plaintiff completed an adult function report. (AR 215-222.) Plaintiff lived in an apartment with his family. (AR 215.) He stated that he stayed in his room most of the day, goes to the bathroom, and eats when he has to. (AR 215.) Plaintiff takes care of pets, feeding them and sometimes cleaning up after them. (AR 216.) Plaintiff's conditions do not affect his sleep. (AR 216.) Plaintiff stated that he wears the same clothes, does not bathe as often as before, lets his hair grow long, hardly shaves, eats at random times, and does not brush his teeth often. (AR 216.) Plaintiff needs reminders to take a shower and brush his teeth. (AR 217.) He does not need reminders to take medication. (AR 217.)

Plaintiff prepares his own meals daily, making sandwiches, canned foods or frozen dinners. (AR 217.) Plaintiff dusts and vacuums his room every two or three days. (AR 215.) He does need reminders to clean his room. (AR 217.) Plaintiff does not want to do house or

yardwork most of the time.  (AR 218.)  Plaintiff feels safer inside the house.  (AR 218.)  When he goes out he uses public transportation or rides in a car.  (AR 218.)  He needs someone to accompany him because he does not feel safe.  (AR 218.)  Plaintiff does not drive.  (AR 218.)  He shops for games by mail or on the computer.  (AR 218.)  Plaintiff's mother pays all his bills.  (AR 218.)  Plaintiff watches television, plays games and reads every day.  (AR 219.)  His ability to do these things has not changed.  (AR 219.)  Plaintiff spends time talking with his family.  (AR 219.)  Plaintiff only goes to the doctor and his mother accompanies him.  (AR 219.)

Plaintiff has no problems getting along with family, friends or neighbors.  (AR 220.)  Plaintiff has problems with lifting, walking, memory, completing tasks, and concentration.  (AR 220.)  How long Plaintiff can pay attention depends on what he is doing.  (AR 220.)  He is able to start what he finishes.  (AR 220.)  Plaintiff is not good at following written instructions, and needs someone to show him.  (AR 220.)  He is better at following oral instructions, but needs an example.  (AR 220.)  Plaintiff gets along well with authority figures.  (AR 220.)  Plaintiff does not handle stress well depending on the situation.  (AR 221.)  It takes Plaintiff a while to handle changes in routine.  (AR 221.)  Plaintiff wears glasses and uses an albuterol inhaler when needed but does not know when they were prescribed.  (AR 221.)

On November 12, 2012, Plaintiff completed a disability report appeal.  (AR 249-255.)  Plaintiff stated that he only leaves his house when his mother goes with him two or three times in six months.  (AR 249.)  Plaintiff was told that he had OCD when he was going to child guidance.  (AR 249.)  Plaintiff feels like something is going to happen to him when he goes out of his house.  (AR 249.)  Plaintiff is tired because he does not sleep well and he forgets things.  (AR 253.)  Plaintiff cannot leave his house to go to work and he was unable to finish high school because a therapist would not give him a note that he could go to school once a week.  (AR 254.)

Plaintiff alleged difficulties with lifting, walking, memory, completing tasks, and concentration.  (AR 220.)  The ALJ found that Plaintiff has adequate concentration to read and play games.  (AR 25.)  Plaintiff's daily activities were a valid reason for the ALJ to discount his credibility regarding the severity of his symptom.

///

1          2.      Inconsistent Statements

2          The ALJ considered that at the May 21, 2014 hearing, Plaintiff testified that he can lift

3   fifty pounds, stand for two hours, walk for an hour, and sit all day long.  (AR 23, 25, 53.)

4   However, at the October 17, 2012 hearing he testified that he has no physical limitations.  (AR

5   25, 98-99.)  The ALJ may consider "ordinary techniques of credibility evaluation," such as prior

6   inconsistent statements concerning symptoms and other testimony that "appears less than

7   candid."  Smolen, 80 F.3d at 1284.  Plaintiff's inconsistent statement was a valid reason to

8   discount his credibility.

9          3.      Lack of Objective Medical Evidence

10          The ALJ found that Plaintiff did not have a physical impairment and the record does not

11   support any standing or walking restrictions.  (AR 24.)  On March 8, 2012, Plaintiff's mother

12   was asked about his physical limitations.  (AR 224.)  She reported that he does not really have

13   asthma attacks.  (AR 224.)  He has an inhaler that he might use once every two months.  (AR

14   224.)  He was hospitalized as a baby for asthma, at about three weeks old, but his asthma is

15   under good control.  (AR 224.)  When asked about his back, she reported that he sometimes

16   complains about his back, but has not seen a doctor for back problems and is able to get around

17   and walk without problems.  (AR 224.)  The ALJ properly considered that there is no medical

18   evidence to support Plaintiff's alleged physical limitations.

19          The ALJ also found that clinical findings do not corroborate Plaintiff's claims of

20   debilitating anxiety or depression.  (AR 25.)  The determination that a claimant's complaints are

21   inconsistent with clinical evaluations can satisfy the requirement of stating a clear and

22   convincing reason for discrediting the claimant's testimony.  Regennitter v. Commissioner of

23   Social Sec. Admin., 166 F.3d 1294, 1297 9th Cir. 1999).  The ALJ properly considered this

24   evidence in weighing Plaintiff's credibility.  "While subjective pain testimony cannot be rejected

25   on the sole ground that it is not fully corroborated by objective medical evidence, the medical

26   evidence is still a relevant factor in determining the severity of the claimant's pain and its

27   disabling effects."  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. §

28   404.1529(c)(2)).  The ALJ properly considered that the objective medical evidence did not

1  support Plaintiff's allegations of disabling mental impairments.

2        4.        Failure to Seek Treatment and Follow Prescribed Treatment Plan

3        Further, in making the credibility determination, the ALJ may consider the plaintiff's

4  complaints about disabling symptoms along with the failure to seek treatment, or failure to

5  follow prescribed treatment, for the symptoms as a basis for finding the complaint unjustified or

6  exaggerated.   Orn, 495 F.3d at 638.   Here, the ALJ found that the record did not show

7  longitudinal treatment notes to support Plaintiff's mental health allegations.  (AR 24.)  Plaintiff

8  had been diagnosed with social phobia and participated in treatment but was discharged in April

9  2011 due to his poor attendance.  (AR 24, 305-344, 359-392.)  Plaintiff did not seek treatment

10  again until after the cessation of his benefits.  (AR 24-25.)  The record shows no longitudinal

11  mental health treatment being limited to only scant notes beginning in December 2013.  (AR 25,

12  458-466.)

13        Although Plaintiff told Dr. Nikkel on February 25, 2012 that his symptoms had worsened

14  (AR 394), he did not receive mental health treatment until December 20, 2013.  (AR 25, 458.)

15  Prior to December 2013, Plaintiff was not prescribed psychotropic medications.   (AR 25.)

16  Although Plaintiff reported seeing improvement with medications and he reported no side

17  effects, he did not take his medication regularly.  (AR 25, 46, 461, 463.)

18        While Plaintiff argues that Plaintiff did not attend medical appointments because his

19  mother said he did not want to go outside, where the evidence is susceptible to more than one

20  rational interpretation, the ALJ's conclusion must be upheld.  Burch, 400 F.3d 676, 679.  Review

21  of the record shows that on April 25, 2007, the therapist met with the family and Plaintiff stated

22  he "just did not want to go to school and or do anything."  (AR 313.)  He was told to attend

23  group the following day and his mother tried to get him out of group due to his sister's birthday.

24  (AR 313.)  A note on June 14, 2007 records that Plaintiff will not return to group.  (AR 306.)  On

25  July 9, 2007, the family failed treatment for not completing the last Plan of Care review.  (AR

26  305.)  On August 13, 2007, Plaintiff stated that he stopped going to group sessions because he

27  did not enjoy them.  (AR 299.)

28        On October 27, 2010, Plaintiff missed his appointment because his mom woke up late.

1   (AR 373.)  On November 3, 2010, Plaintiff's mom cancelled the appointment because he had

2   been up all night and was sick.  (AR 372.)  On November 17, 2010, Plaintiff did not attend

3   therapy because he and his mom were ill.  (AR 371.)  On January 31, 2011, Plaintiff stated that

4   his reasons for not wanting to attend therapy vary, but on that date it was defiance.  (AR 366.)

5   On February 3, 2011, a record shows that Plaintiff did not attend an appointment because his

6   family was ill and he would be missing the next week because his mom was having surgery.

7   (AR 365.)  The family was informed that another missed session would result in closure of the

8   case.  (AR 365.)  Substantial evidence supports the ALJ's conclusion that Plaintiff's failure to

9   seek treatment undermined his allegations regarding the severity of his symptoms.

10       Plaintiff also argues that his resistance to medication and forgetfulness are related to the

11   Plaintiff's mental impairments.  However, there is no medical evidence in the record to support

12   Plaintiff's allegations of memory impairments.  (AR 293, 339, 348, 397, 459, 462, 465.)

13   Substantial evidence supports the ALJ's finding that Plaintiff's lack of medication compliance

14   was not due to failure to remember to take his medication, but because he did not want to rely on

15   medication and wanted to keep his medication dose at low levels.  (AR 23, 299, 366, 463.)  The

16   ALJ properly considered Plaintiff's failure to pursue treatment and to comply with his

17   medication in making the credibility determination.

18       5.   Third Party Evidence

19       The ALJ found that Plaintiff's complaints of anxiety symptoms and social anxiety were

20   also undermined by the testimony of Plaintiff's teacher.  (AR 25.)  Plaintiff's teacher noted that

21   he had no difficulty interacting and relating with others and that he was one of the brightest and

22   best behaved students.  (AR 25.)  On October 29, 2007, Plaintiff's teacher, Ms. Richardson,

23   completed a questionnaire on his overall functioning.  (AR 180-187.)  Ms. Richardson had been

24   his teacher on independent study for a year and a half.  (AR 180.)  She noted that Plaintiff had no

25   problems acquiring and using information, attending and completing tasks, interacting or relating

26   with others, moving about and manipulating objects, or caring for himself.  (AR 181-185.)  Ms.

27   Richardson stated that she had never seen Plaintiff suffer from any condition.  (AR 186.)  Ms.

28

1  Richardson commented that Plaintiff is one of the brightest and best behaved students that she

2  had.  (AR 186.)

3        6.      The ALJ Provided Clear and Convincing Reasons for the Credibility Finding

4        The  ALJ  provided  clear  and  convincing  reasons  that  are  supported  by  substantial

5  evidence in the record to support the finding that Plaintiff's symptoms were not as severe as he

6  alleged.

7        **D.      Third Party Witness Credibility**

8        Plaintiff  also  contends  that  the  ALJ  erred  by  failing  to  properly  evaluate  lay  witness

9  testimony.  Defendant  counters  that  the  ALJ  gave  germane  reasons  to  reject  the  third  party

10  witness testimony.  Plaintiff replies that is no evidence that the medically impaired plaintiff is an

11  accurate historian and therefore his mother's testimony should be given more weight.

12        "In  determining  whether  a  claimant  is  disabled,  an  ALJ  must  consider  lay  witness

13  testimony  concerning  a  claimant's  ability  to  work."  Stout, 454 F.3d at 1053; 20 C.F.R. §

14  404.1513(d)(4).  "Lay  witness  testimony  is  competent  evidence  and  cannot  be  disregarded

15  without  comment."  Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting Nguyen v.

16  Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)).  The ALJ must give specific reasons germane to

17  the witness in discounting the lay witness testimony.  Stout, 454 F.3d at 1056.

18        While the ALJ must give reasons that are germane to each witness to reject third party

19  testimony, the Ninth Circuit has not required the ALJ to discuss every witnesses' testimony on

20  an individualized basis.  Molina, 674 F.3d at 1114.  Where the ALJ gives germane reasons to

21  reject the testimony of one witness, the ALJ need only point to those reasons in rejecting the

22  testimony of the second witness.  Id.

23        Plaintiff argues that the ALJ simply discounted his mother's testimony for the same

24  reasons that his testimony was discredited.  The ALJ properly rejected the similar third party

25  witness testimony for the same reasons that Plaintiff's testimony was discredited.  (AR 26.)

26  Where the ALJ gives reasons for rejecting the claimant's testimony that are equally relevant to

27  similar testimony provided by lay witnesses, that would support a finding that the lay witness

28  testimony is similarly not credible.  Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694

1   (9th Cir. 2009).

2          However, the ALJ also rejected the testimony because Plaintiff's mother stated that

3   Plaintiff did not do household chores (AR 288), while Plaintiff stated that he cleaned his room

4   every two to three days (AR 25, 215, 217).  The ALJ provided germane reasons to reject the

5   testimony of Plaintiff's mother.

6          **E.     Ability to Perform Work**

7          Plaintiff contends that the ALJ erred in failing to address how the effects of his

8   prescribed medication, lack of work history, and history of missing appointments would allow

9   him to be employed.

10          Plaintiff argues that the ALJ failed to consider the effects of his medication.  However,

11   the medical record demonstrates that Plaintiff denies side effects from his medication.  (AR 459,

12   461).  Plaintiff also argues that the ALJ failed to consider Plaintiff's contention that he is unable

13   to do sedentary work and show up on time consistently.  However, Plaintiff's arguments

14   regarding these issues are subsumed in the ALJ's opinion addressing Plaintiff's credibility.

15          **F.     Step Five**

16          Plaintiff contends that the ALJ erred in finding that there were jobs that he could perform

17   in the national economy.  First, Plaintiff argues that the ALJ discounted the testimony of the VE

18   that a claimant that is able to have no public contact and is unable to interact with supervising

19   coworkers 50% of the day and cannot handle routine changes in the working setting 50% of the

20   day is unemployable.  However, Plaintiff was not found to have such limitations and the Court

21   finds no merit in this argument.

22          At Step Four, the ALJ assesses the claimant's "residual functional capacity," which is

23   defined as the most that a claimant can do despite the "physical and mental limitations" caused

24   by his impairments and related symptoms.  20 C.F.R. § 416.945(a)(1).  At Step Five, the burden

25   shifts to the Commissioner "to identify specific jobs existing in substantial numbers in the

26   national economy that [a] claimant can perform despite [his] identified limitations."  Johnson v.

27   Shalala, 60 F.3d 1428, 1432 (9th Cir.1995); see also 20 C.F.R. § 416.920(g).  At this step, the

28   ALJ considers potential occupations that the claimant may be able to perform.  Zavalin v.

1     Colvin, 778 F.3d 842, 845 (9th Cir. 2015); see 20 C.F.R. § 416.966.

2        The ALJ relies on the DOT, which is the Social Security Administrations "primary

3 source of reliable job information" regarding jobs that exist in the national economy, in making

4 this determination.  Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir.1990).  "The DOT describes

5 the requirements for each listed occupation, including the necessary General Educational

6 Development ('GED') levels; that is, 'aspects of education (formal and informal) ... required of

7 the worker for satisfactory job performance.' "  Zavalin, 778 F.3d at 845 (quoting DOT, App. C,

8 1991 WL 688702 (4th ed.1991)).

9        Along with the DOT, the ALJ will rely on the testimony of a vocational expert who

10 testifies about specific occupations that a claimant is able to perform based on his residual

11 functional capacity.  Valentine, 574 F.3d at 689; 20 C.F.R. § 416.966(e).  In concluding the Step

12 Five analysis, the ALJ determines "whether, given the claimant's [residual functional capacity],

13 age, education, and work experience, he actually can find some work in the national economy."

14 Valentine, 574 F.3d at 689; see also 20 C.F.R. § 416.920(g).  An ALJ cannot rely on the VE's

15 testimony without inquiring whether it conflicts with the DOT and obtaining a reasonable

16 explanation for any apparent conflict.  Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007).

17        The ALJ held that

18       The vocational expert testified that given all of these factors the individual would
       be able to perform the requirements of representative occupations such as hand
19      packager (DOT 920.587- 018) a medium job with an SVP2 rating (representing
       about 265,000 jobs in the national economy and 37,000 jobs in California); small
20      products assembler (DOT 706.684- 022) a light job with an SVP2 rating
       (representing about 96,000 jobs in the national economy and 8,000 jobs in
21      California); and laundry sorter (DOT 361.687- 014) a light job with an SVP2
       rating (representing about 204,000 jobs in the national economy and 21,000 jobs
22      in California).  Mr. Greenberg stated that the numbers he cited for these
       occupations have been eroded by 50% to take into consideration the
23      characteristics of the hypothetical question.

24 (AR 25.)

25        Plaintiff argues that he would not be able to perform the job of a hand packager because a

26 person with Plaintiff's limitations could not do this somewhat complex job.  However, Plaintiff

27 does not identify how the VE's testimony in this action deviates from the DOT.  "[A]n ALJ may

28 rely on expert testimony which contradicts the DOT, but only insofar as the record contains

persuasive evidence to support the deviation."   Johnson, 60 F.3d at 1435.   Here, the ALJ proffered a hypothetical based upon the limitations which he found to be applicable to Plaintiff. The VE testified that Plaintiff would be able to perform the job of a hand packager and eroded the number of jobs available to account for Plaintiff's limitations.   (AR 58.)   Plaintiff has not demonstrated that the ALJ erred by relying on the testimony of the VE to find that Plaintiff can perform the job of a hand packager.

Plaintiff also argues that the ALJ erred in finding that he could perform work as a counter clerk or investigator, dealer accounts.   However, the ALJ did not find that Plaintiff can perform these jobs.   The ALJ found that Plaintiff can perform work as a small products assembler or laundry sorter. (AR 25.)   Further, Plaintiff argues that his bad eyesight and hearing would preclude such occupations.   But there is no evidence in the record that Plaintiff has problems with his eyesight or hearing.

The ALJ did not err in relying on the testimony of the VE at Step Five to determine that there was substantial work in the national economy that Plaintiff could perform.

**V.**

**CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ did not err in determining that Plaintiff was not disabled.  Accordingly,

IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Joseph Marcos Duran.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:  __**April 6, 2017**__

_____
UNITED STATES MAGISTRATE JUDGE